ORIGINAL

**FILED**

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

JUN ' 9 2014

U.S. COURT OF
FEDERAL CLAIMS

MANSOOR INTERNATIONAL )
   DEVELOPMENT SERVICES, INC., *an* )
   *Afghanistan corporation,* )
                                  )
         *Plaintiff,* )
                                    )   No. **14 - 496C**
   *vs.* )
                                    )
UNITED STATES OF AMERICA, *through its* )
   *agency, the United States Army, Bagram* )
   *Regional Contracting Center,* )
                                    )
         *Defendant.* )

## COMPLAINT

Pursuant to the Contract Disputes Act of 1978, Plaintiff Mansoor International Development Services, Inc., t/a MiDS, Inc., brings this appeal of the Final Decision of the Contracting Officer dated June 13, 2013, under Contract No. W91B4N-11-D-7011, and complains and alleges as follows:

## PARTIES AND JURISDICTION

1.    This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1491(a)(2) and 41 U.S.C. § 7104(b), because it is an appeal of the Final Decision of a Contracting Officer pursuant to 41 U.S.C. § 7103, as hereinafter more fully appears. This action is timely in that it has been filed within twelve months from the date of the receipt by the Contractor of the Final Decision of the Contracting Officer concerning Plaintiff's Certified Claim.

2.    Plaintiff Mansoor International Development Services, Inc. ("MiDS") is a corporation organized under the laws of Afghanistan and is based in Kabul, Afghanistan.

3.     Defendant United States Army, Bagram Regional Contracting Center (the "Government") is an agency of the United States Government, within the meaning of the Contract Disputes Act.

## BACKGROUND AND FACTS

4.     On or about August 11, 2011, the Government awarded to MiDS Contract No. W91B4N-11-D-7011 (the "Contract") in the estimated total award amount of 48,307,159,600 Afghanis ("AFN").

5.     The Contract was a multi-award, IDIQ-type contract for the provision of trucking services in Afghanistan under the National Afghan Trucking ("NAT") program.  Task orders under the Contract consisted of Transportation Movement Requests ("TMRs"), which were awarded on a competitive basis, based upon rankings of NAT contractors.  TMRs were compensated on the basis of fixed unit prices for specified services, distances, demurrage (delays) and other factors.  Payment of the TMRs was further subject to reduction or backcharge based upon various quality assurance/quality control (QA/QC) factors, including issues such as unexcused delays, failures to comply with performance objectives, failures to complete the mission and/or pilferage or loss of the cargo.

6.     The work under the Contract was divided into several "Suites" - Suite I "Bulk Fuels," Suite II "Dry Cargo" and Suite III "Heavy Cargo" - based upon the nature of the cargo being hauled and the assets/equipment needed to perform the work.  The Contract specifies a series of fixed unit prices for services under each Suite based upon completed Mission Units ("MUs" - defined as 50 km. segments), assets used, and responsibility for mission security.

7.     The Contract as awarded was for an initial 12-month base term.  The Contract was terminated for default by letter dated March 31, 2012, which was issued as the final decision

2

of the Contracting Officer on September 1, 2012.  The termination for default is under appeal at the Armed Services Board of Contract Appeals as Case No. ASBCA 58423.

8.      On February 22, 2013, MiDS submitted to the Contracting Officer a duly Certified Claim in the amount of AFN 81,473,654,[1] seeking payment for some 519 TMRs, previously submitted under various invoices, that the Government had refused to pay, in whole or in part, for the period between September, 2011 and June, 2012.  A true copy of the Certified Claim, which incorporated by reference documents submitted 22 October, 2012, is attached as Exhibit A.

9.      The Government refused to pay the 519 TMRs, in whole or in part, for a variety of reasons, including disagreements or misunderstandings with MiDS about the number of MUs applicable to the TMR, whether the mission was one-way or a round trip, the assets used, the payments required for a canceled or redirected missions, the type of security provided for the mission, whether the mission was actually completed, the timeliness of pick-ups or deliveries, and other issues.

10.     The Contracting Officer issued her Final Decision on the Certified Claim by letter dated June 11, 2103.  A copy of the Final Decision is attached as Exhibit B.

11.     The Final Decision did not purport to adjudicate the validity of MiDS' Claim with respect to any one of the 519 TMRs listed.  Rather, in the course of a 4-page decision, the Contracting Officer:

      a.      Noted that 244 (46.4%) of the disputed TMRs related to alleged failures by MiDS to meet the Required Delivery Date (RDD);

      b.      Noted that 95 (18.3%) of the disputed TMRs related to alleged failures to meet the Required Spot Date (RSD);

---

[1]  U.S. $1,406,660, at the current exchange rate of AFN 1 = U.S. $0.01727.

  c.  Compared MIDS' performance to "2,007 disputed TMRs previously submitted by all NAT carriers;" and

  d.  Concluded, based upon the application of an alleged, but undefined, "Aggregate Claims Adjudication (ACA) method" to these "facts" that TMRs with a total value of only AFN 25,458,989.67 could be "substantiated."

12. The Contracting Officer did not identify exactly which TMRs had been "substantiated" by use of the ACA, nor is it clear that it is possible for her to do so, based upon her admission that the calculations depend not upon review of individual TMRs, but upon consideration of the percentages of claims paid to other contractors, "statistical methods" and "sampling" techniques.

13. The Final Decision recites the negotiation history of the claim in which the Contracting Officer concedes that she declined MiDS' request that she evaluate and negotiate each TMR. It then states that when MiDS refused to provide what was considered to be a reasonable counter-proposal, the Contracting Officer converted her own final offer of AFN 30,000,000 into the Contracting Officer's Final Decision.

14. She concludes, at page 3 of the Final Decision, that:

> The Government agrees that MIDS has established entitlement to part of its claims, but, based on the results of the audit the Government disagrees with MIDS that the entirety of the claims is valid. Therefore, the Government partially denies the claim of 81,473,654.00 and has determined that the contractor is only entitled to 30,000,000 AFN.

15. Because Plaintiff is entitled to payment for the TMRs submitted as part of the Certified Claim dated 22 February, 2013, and because the Contracting Officer breached the Government's implied covenant of good faith and fair dealing in failing to consider and negotiate with Plaintiff the merits of the individual TMRs, Plaintiff appeals the Final Decision dated 11 June, 2013, and brings its Complaint to this honorable Court within one year after its receipt of the Final Decision of the Contracting Officer.

4

## COUNT I
### Appeal of Contracting Officer's Final Decision

16.     Plaintiff repeats and realleges paragraphs 1 through 15 above, as if fully set forth herein.

17.     The Government breached the Contract by rejecting or failing to pay, in full or in part, the 519 TMRs included in the Contractor's Certified Claim filed 22 February, 2013.

18.     Contrary to the Contracting Officer's Final Decision, MiDS is entitled to payment of the TMRs included in the Claim for one or more of the following reasons:

   a.     The Government failed to pay for the services provided despite the fact that MiDS fully and completely complied with the requirements of the Contract with respect to the services provided under the TMR;

   b.     The Government failed to pay for the services provided at the applicable Contract rate(s), based upon the number of MUs, the assets, and the security services actually provided;

   c.     The Government failed to pay for the services provided, despite its prior waiver of Required Spot Dates (RSDs);

   d.     The Government failed to adjust Required Delivery Dates (RDDs), despite excusable delays; and/or

   e.     The Government failed to pay for cancelled missions despite MiDS' compliance with RSDs.

19.     As the result of the Government's failure to pay the TMRs, Plaintiff has suffered damages.

WHEREFORE, with respect to this Count I, Plaintiff demands that the Court grant its appeal of the Contracting Officer's Final Decision dated 11 June, 2013, and that it enter judgment against the United States in the amount of at least AFN 75,000,000 (USD $1,294,890), or such greater or lesser amount as shall be determined to be due and owing at trial, and further, that it award Plaintiff interest, costs of suit and such other relief as to the Court may seem just and proper.

#30104612_v2

## COUNT II
### Breach of Covenant of Good Faith and Fair Dealing

20.     Plaintiff repeats and realleges paragraphs 1 through 15 above, as if fully set forth herein.

21.     The Contract imposes upon the Government a duty of good faith and fair dealing in its performance and enforcement of the Contract.

22.     That covenant of good faith and fair dealing included the Contracting Officer's duty, under law, to render a decision on Plaintiff's claim that was fair and impartial.   More specifically, she was required to review the facts pertinent to the claim and prepare a written decision that, among other things, provides a description of the claim or dispute, references pertinent contract terms, identifies the factual areas of agreement and disagreement and provides the Contracting Officer's final decision, with supporting rationale.  FAR 33.211(a).

23.     As part of that duty, the Contracting Officer was required to take into account "(1) the size and complexity of the claim; (2) the adequacy of the contractor's supporting data; and (3) any other relevant factors."  FAR 33.211(d).

24.     In considering Plaintiff's claim here, the Contracting Officer breached her duty to fairly and independently consider the merits of the contractor's claim, including, but not limited to the adequacy of its supporting data.  Instead, upon information and belief, she arbitrarily and capriciously applied undisclosed statistical analyses, involving data from other contracts, to the gross amount of Plaintiff's claim, refusing to consider or negotiate with Plaintiff the merits of individual claim elements.

25.     As a result of the Government's breach of the duty of good faith and fair dealing, Plaintiff has suffered damages.

#30104612_v2

WHEREFORE, with respect to this Count II, Plaintiff demands that the Court grant its appeal of the Contracting Officer's Final Decision dated 11 June, 2013, and that it enter judgment against the United States in the amount of at least AFN 75,000,000 (USD $1,294,890), or such greater or lesser amount as shall be determined to be due and owing at trial, and further, that it award Plaintiff interest, costs of suit and such other relief as to the Court may seem just and proper.

June 9, 2014                              Respectfully submitted,


Thomas M. Brownell
Terry L. Elling
HOLLAND & KNIGHT LLP
1600 Tysons Blvd. Ste 700
McLean, VA  22102
703-720-8600
703-720-8610
thomas.brownell@hklaw.com
terry.elling@hklaw.com

*Counsel for Plaintiff, Mansoor International Development Services, Inc.*

# EXHIBIT A



House No. 4, Street No. 2, Sarai Ghazni

Kabul, Afghanistan, Phone: +93 799 303489

Email: ceo@midscorp.com

Certification of Claims for Contract No: W91B4N-11-D-7011

For Documents submitted on 22nd October 2012

To: Bagram Contracting Office

Attention: Contracting Officer

**I certify that the claim is made in good faith; that the supporting data are accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the contract adjustment for which the contractor believes the Government is liable; and that I am duly authorized to certify the claim on behalf of the contractor.**

If you have any question, please feel free to contact us at ceo@midscorp.com

Thanks,



Yousuf Mansoor

Chief Executive Officer

MIDS INC.

Kabul, Afghanistan

Date: 22nd Feb 2013

# EXHIBIT B




**HEADQUARTERS**
**CENTCOM JOINT THEATER SUPPORT CONTRACTING COMMAND (FORWARD)**
**GENERAL SUPPORT CONTRACTING CENTER**
**CAMP PHOENIX, AFGHANISTAN**
**APO AE 09320**
REPLY TO

C-JTSCC/GSCC                                                          11 June 2013

MEMORANDUM FOR MANSOOR INTERNATIONAL DEVELOPMENT SERVICES
(MIDS)

SUBJECT: Contracting Officer Final Decision, Claim for Payment on 519 Transportation
Movement Requests, Contract W91B4N-11-D-7011

1. The Government acknowledges receipt of your certified claim dated 22 Feb 2013, in the
amount of 81,473,654 AFN (USD 1,675,633.43), for Suites II & III with supporting
documentation for 519 Transportation Movement Requests (TMR) listed in enclosure 1.

2. GSCC has conducted an extensive audit on your individual line item (TMR) claims to include
segregation of clearly non-meritorious TMRs, comparison of categories of TMRs, and specific
sampling of individual TMRs. This extensive audit constitutes the foundation for what we have
referred to in our correspondences as the Aggregate Claims Adjudication (ACA) method.

3. The ACA method utilizes historical data to produce a baseline for sampling of a NAT
contract carrier's claims. To prepare a proposal, the contracting officer uses the ACA method to
develop a statistically sound payout expectation. The ACA results are then compared to a
historical data trend analysis to audit the validity of a carrier's claim. Given the discrete set of
variables affecting the payout of individual TMRs, the large sample size of TMRs, and standard
statistical analysis, the ACA auditing method produces a sound method for evaluating a
particular NAT contract carrier's overall claim for a set of TMRs submitted.

4. After conducting the ACA audit for your claim, the contracting officer determined that
25,458,989.67AFN (523,604.04USD) could be substantiated based upon the documentation
submitted by MIDS and compared to historical data samplings of past TMR payments.
Specifically:

   a. Of the 519 disputed TMRs submitted by MIDS, 241 TMRs were not paid as a result of
   MIDS' failure to ensure timely delivery. Per PWS paragraph 5.4, missions completed
   more than seven days beyond the Required Delivery Date (RDD) are considered
   "failed" and result in no compensation. Therefore, 46.4% of TMRs disputed by MIDS
   are a result of MIDS failure to ensure timely delivery pursuant to the requirements of
   the PWS.

   b. An additional 95 of MIDS's disputed TMRs did not meet the requirements necessary
   for satisfactory compliance with the Required Spot Date (RSD). Per PWS paragraph
   5.4, any mission which does not meet the RSD by 1000hrs local time is considered a
   failed mission, resulting in no compensation. This number accounts for 18.3% of the
   individual line-item TMRs.

C-JTSCC/GSCC
SUBJECT: Contracting Officer Final Decision, Claim for Payment on 519 Transportation
Movement Requests, Contract W91B4N-11-D-7011

c. These two categories account for 336 out of 519 disputed TMRs submitted by MIDS. Therefore, 64.7% of TMRs submitted by MIDS in the present claim represent instances where MIDS failed to ensure timely delivery (failed RDD) or failed to comply with RSD.

d. Additionally, using historical data, we compared MIDS' disputed TMRs to 2,007 disputed TMRs previously submitted by all NAT carriers. The contracting officer observed the following:

   (1) MIDS' claimed "per TMR" average, 157,894.68 AFN (USD 3,247.35), is significantly higher than the historic average of 49,053.93 AFN (USD 1,008.87).

   (2) A significant percentage of the TMRs submitted by MIDS did not contain GDMS screenshots but instead only contained google maps printouts. As you are aware, google maps does not contain military grid reference system (MGRS) coordinates, "ping rates", real-time date stamps, ITV numbers which correspond with specific TMRs, or other data which is contained in GDMS and which would identify performance measurement standards necessary to validate basic transportation services.

   (3) Of the 2,007 TMRs submitted by all NAT carriers, approximately 41% received some form of payment (822 out of 2,007).

e. As noted above, 64.7% of MIDS TMRs fall into two distinct categories which represent failure on the part of MIDS to adhere to the terms of the contract. This leaves 35.3%, which is less than the 41% historically paid to the NAT carriers for all previous TMR submittals.

5. Instead of analyzing the MIDS claim from a baseline which would tend to exclude the percentage of TMRs that represent a failure on the part of MIDS to adhere to the terms of the contract, the ACA method represents a calculation which includes consideration of the overall makeup of the 519 TMRs submitted by MIDS. Considering the historic per TMR average paid and applying the statistical methodology to validate the results, the USG established a negotiating range which could be substantiated based upon the documentation submitted by MIDS. As noted above, the USG determined that 25,458,989.67AFN (USD 523,604.04) could be substantiated based upon the documentation submitted by MIDS.

4. On 20 April 2013, the Contracting Officer notified MIDS that the USG was prepared to negotiate an overall settlement for the 519 TMRs that constitute MIDS' claim. The Contracting Office then emailed a letter, NAT 0467-Aggregate Claim Mutual Settlement dated, 20 April 2013 which included the USG's opening offer in the amount of 25,458,989.67AFN (USD 523,604.04) to MIDS for review and consideration. The USG scheduled a teleconference with MIDS in order to discuss the ACA process in detail, as well as open negotiations for the 519 TMRs which constitute MIDS' claim.

C-JTSCC/GSCC
SUBJECT: Contracting Officer Final Decision, Claim for Payment on 519 Transportation
Movement Requests, Contract W91B4N-11-D-7011

5.  On 25 April 2013, a teleconference was held with MIDS and the Contracting Office.  During
this teleconference, the USG explained to MIDS that the settlement negotiation would center
around a single claim adjudication that would encompass all 519 TMRs which constituted
MIDS' claim.  The USG requested that MIDS consider the government's offer of 25,458,989.67
AFN and provide a response to the settlement negotiations by 29 April 2013.

On 29 April 2013, the Contracting Office received a letter from MIDS which requested that the
USG evaluate each TMR individually.  MIDS did not offer a counteroffer to the USG's offer.

5.  On 2 May 2013, an additional teleconference was held.  During this teleconference, MIDS
indicated that they did not internally discuss proposing a counteroffer to the USG.  The USG
requested that MIDS re-consider the USG's offer of 25,458,989.67 AFN and clarified to MIDS
that the USG was expecting to enter into negotiations in order to settle MIDS' claim.  The USG
requested that MIDS propose a counter-offer.  Both MIDS and the USG agreed upon a deadline
of 7 May 2013.

6.  In an email dated 8 May 2013, MIDS declined to submit a counteroffer to the USG's offer of
25,458,989.67 AFN.

7.  On 22 May 2013, the Contracting Officer requested that MIDS reconsider their refusal to
submit a counteroffer to the USG's offer of 25,458,987.67 AFN.

8.  On 26 May 2013, MIDS submitted, via email, a counteroffer of "90% of their original claim".
which equals 73,326,288.60 AFN (USD 1,508,070.09).

9.  On 5 Jun 2013, The Contracting officer considered all the information and provided MIDS
another counteroffer of 30,000,000.00AFN.  On 10 June 2013 MIDS replied via email they have
to reject the 30,000,000.00AFN and their previous counteroffer stands and they expect a more
reasonable offer and are willing to negotiate.  The Government at this times feels although MIDS
indicated they were willing to negotiate they didn't do so in good faith by indicating their
previous counteroffer stands even though the Government offered a higher offer.

The Government agrees that MIDS has established entitlement to part of its claims, but, based on
the results of the audit the Government disagrees with MIDS that the entirety of the claim is
valid.  Therefore, the Government partially denies the claim of 81,473,654 00 and has
determined that the contractor is only entitled to 30,000,000.00 AFN.

 In accordance with FAR 33.210 this is the final decision of the Contracting Officer. You may
appeal this decision to the agency board of contract appeals. If you decide to appeal, you must,
within 90 days from the date you receive this decision, mail or otherwise furnish written notice
to the agency board of contract appeals and provide a copy to the Contracting Officer from
whose decision this appeal is taken. The notice shall indicate that an appeal is intended, reference
this decision, and identify the contract by number.

C-JTSCC/GSCC
SUBJECT: Contracting Officer Final Decision, Claim for Payment on 519 Transportation
Movement Requests, Contract W91B4N-11-D-7011

With regard to appeals to the agency board of contract appeals, you may, solely at your election, proceed under the boards—

(1) Small claim procedure for claims of $50,000 or less or, in the case of a small business concern (as defined in the Small Business Act and regulations under that Act), $150,000 or less; or

(2) Accelerated procedure for claims of $100,000 or less.  Instead of appealing to the agency board of contract appeals, you may bring an action directly in the United States Court of Federal Claims (except as provided in the Contract Disputes Act of 1978, 41 U.S.C. 603, regarding Maritime Contracts) within 12 months of the date you receive this decision

9. The point of contact for this memorandum is the SFC John D Hickman at DSN 449-8101 or by email at John.d.Hickman@afghan.swa.army.mil.

BRETON.SHERRY.A
.1006133483

SHERRY A. BRETON
Contracting Officer

Enclosures:
Enclosure 1 TMR List
Enclosure 2 Acronym List

Enclosure 1: TMR List

| ABA1452 | ABB4483 | ABB2477 | ABC2125 | ABB0550 | ABA0438 |
|---------|---------|---------|---------|---------|---------|
| ABA2613 | ABC1374 | ABB2484 | ABC2429 | ABB5765 | ABA0618 |
| ABA2617 | ABC3479 | ABB2495 | ABC2745 | ABC1455 | ABA3273 |
| ABA2621 | ABC4536 | ABB2610 | AAJ1710 | ABC1457 | ABA3624 |

C-JTSCC/GSCC
SUBJECT: Contracting Officer Final Decision, Claim for Payment on 519 Transportation
Movement Requests, Contract W91B4N-11-D-7011

| | | | | | |
|---|---|---|---|---|---|
| ABA2850 | ABC4539 | ABB3199 | AAJ2947 | ABC2510 | ABA4663 |
| ABA3917 | AAI3543 | ABB3278 | AAJ2948 | ABC2757 | ABB0049 |
| ABB0118 | AAL3598 | ABB3279 | AAJ5255 | ABC3141 | ABB0752 |
| ABB1079 | ABA8539 | ABB3347 | AAJ5287 | ABC3146 | ABB2190 |
| ABB1524 | ABB2579 | ABB3348 | AAJ5479 | ABC3237 | ABB2328 |
| ABB1737 | ABC1182 | ABB3745 | AAJ5663 | ABC3438 | ABB2519 |
| ABB1977 | ABC2737 | ABB4044 | AAJ5735 | ABC3462 | ABB2650 |
| ABB1991 | AAL2449 | ABB5810 | AAJ5736 | ABC3463 | ABB4380 |
| ABB2445 | AAL3078 | ABB5846 | AAJ5737 | ABC3684 | ABB5397 |
| ABB2477 | AAI4378 | ABB6144 | AAJ5742 | ABC3685 | AAJ6187 |
| ABB2484 | AAJ0148 | ABB6206 | AAJ5900 | ABC3899 | AAL1816 |
| ABB2869 | AAL6644 | ABB7503 | AAJ5978 | ABC3909 | AAL1821 |

C-JTSCC/GSCC
SUBJECT: Contracting Officer Final Decision, Claim for Payment on 519 Transportation
Movement Requests, Contract W91B4N-11-D-7011

| | | | | | |
|---|---|---|---|---|---|
| ABB2874 | ABB2321 | ABC0148 | AAJ5998 | ABC3911 | AAL1829 |
| ABB3199 | ABB2455 | ABC3219 | AAJ6008 | ABC3915 | AAL1402 |
| ABB3277 | AAL4841 | ABC3452 | AAJ6018 | ABC3918 | AAJ4528 |
| ABB3304 | ABC4081 | ABA2925 | AAJ6189 | ABC3943 | AAL3624 |
| ABB3610 | ABB2507 | ABA5471 | AAJ6454 | ABC3944 | AAK6748 |
| ABB3948 | ABC1674 | AAI3502 | AAJ6455 | ABC3945 | AAL5457 |
| ABB4047 | AAK6323 | AAI3503 | AAJ6456 | ABC3961 | AAL7576 |
| ABB5145 | AAL2328 | AAJ0876 | AAJ6457 | ABC3962 | ABA1100 |
| ABB5515 | AAL2343 | AAI3484 | AAJ6458 | ABC4547 | ABA1440 |
| ABB5846 | AAL2448 | AAJ0102 | AAJ6507 | ABC4548 | ABA1500 |
| ABB6144 | AAL2449 | AAJ0549 | AAJ6835 | ABC4549 | ABA6501 |
| ABB6206 | AAL2453 | AAJ1005 | AAJ6850 | ABC3292 | ABB0620 |

C-JTSCC/GSCC
SUBJECT: Contracting Officer Final Decision, Claim for Payment on 519 Transportation
Movement Requests, Contract W91B4N-11-D-7011

| | | | | | |
|---|---|---|---|---|---|
| ABB6270 | AAL2456 | AAJ1707 | AAJ6865 | ABC3485 | AAL7857 |
| ABB6387 | AAL3713 | AAJ1987 | AAJ6869 | AAL7574 | ABA0616 |
| ABB7353 | AAL4031 | AAJ2462 | AAJ6870 | AAL7575 | ABA0627 |
| ABB7365 | AAL5406 | AAJ2468 | AAJ6871 | ABB5834 | ABA0629 |
| ABB7369 | AAL6035 | AAJ2569 | AAK0738 | ABC3501 | ABA0641 |
| ABB7544 | AAL6960 | AAJ2768 | AAK0739 | ABC3069 | ABA1205 |
| ABC0116 | AAL7579 | AAJ3302 | AAK1459 | ABC3450 | ABA1379 |
| ABC0173 | AAL7583 | AAJ3690 | AAK1471 | AAJ6640 | ABA1439 |
| ABC0181 | AAL7865 | AAJ3691 | AAK1472 | AAK4797 | ABA1444 |
| ABC0189 | ABA1146 | AAJ4339 | AAK1479 | AAK7126 | ABA2806 |
| ABC0198 | ABA1695 | AAJ4340 | AAK1483 | AAL0889 | ABB0557 |
| ABC0214 | ABA1712 | AAJ4622 | AAK1508 | AAL8445 | ABB0558 |

C-JTSCC/GSCC
SUBJECT: Contracting Officer Final Decision, Claim for Payment on 519 Transportation
Movement Requests, Contract W91B4N-11-D-7011

|         |         |         |         |         |         |
|---------|---------|---------|---------|---------|---------|
| ABC1378 | ABA1715 | AAJ4633 | AAK1510 | ABA0882 | ABB0562 |
| ABC1647 | ABA1716 | AAJ5739 | AAK1916 | ABA1016 | ABB1373 |
| ABC1651 | ABA1839 | AAJ5740 | AAK2135 | ABA1148 | ABB1403 |
| ABC1653 | ABA1840 | AAJ6433 | AAK2720 | ABA1472 | ABB1842 |
| ABC1654 | ABA1847 | AAJ6434 | AAK2769 | ABA2456 | ABB1871 |
| ABC1675 | ABA1848 | AAK0296 | AAK3050 | ABA2478 | ABB2325 |
| ABC1980 | ABA1860 | AAK0731 | AAK3222 | ABA6000 | ABB2331 |
| ABC2326 | ABA2832 | AAJ3659 | AAK3228 | ABB0118 | ABB2720 |
| ABC2505 | ABA3977 | AAI3356 | AAK3235 | ABB1986 | ABB5659 |
| ABC2515 | AAL2335 | AAJ0142 | AAK3262 | ABB1991 | ABB5727 |
| ABC2838 | AAK0729 | AAJ0143 | AAK5061 | ABB2445 | ABC1192 |
| ABC2932 | AAK0933 | AAJ1323 | AAK5184 | AAJ1094 | AAJ6500 |

C-JTSCC/GSCC
SUBJECT: Contracting Officer Final Decision, Claim for Payment on 519 Transportation
Movement Requests, Contract W91B4N-11-D-7011

| | | | | | |
|---|---|---|---|---|---|
| ABC2965 | AAK1056 | AAJ1324 | AAK6016 | AAJ6143 | AAK0733 |
| ABC3090 | AAK1138 | AAJ2107 | AAK6521 | AAJ6144 | AAK0736 |
| ABC3147 | AAK1464 | AAJ3370 | AAK6534 | AAK5978 | AAK0914 |
| ABC3344 | AAK1937 | AAJ5205 | AAK7055 | AAK0543 | AAK1066 |
| ABC3345 | AAK5235 | AAJ5207 | AAL0467 | AAK0544 | AAK1067 |
| ABC3367 | AAL0751 | AAI3747 | AAL0478 | AAK0545 | AAK1068 |
| ABC3374 | AAL0795 | AAI5369 | AAL1360 | AAK3232 | AAK1931 |
| ABC3377 | AAL0812 | AAJ1193 | AAL1363 | AAK3368 | AAK1938 |
| ABC3379 | AAL0821 | AAJ3631 | AAL1415 | AAK6527 | AAK4225 |
| ABC3382 | AAL0859 | AAJ3634 | AAI3695 | AAJ2992 | AAK4585 |
| ABC3472 | AAL0880 | AAJ3641 | AAJ1444 | AAK1060 | AAK5058 |
| ABC3480 | AAL0885 | AAJ5473 | AAJ2459 | AAJ4477 | AAK6534 |

C-JTSCC/GSCC
SUBJECT: Contracting Officer Final Decision, Claim for Payment on 519 Transportation
Movement Requests, Contract W91B4N-11-D-7011

| | | | | | |
|---|---|---|---|---|---|
| ABC3482 | AAL0886 | AAJ6595 | AAJ2463 | AAJ6586 | AAJ2766 |
| ABC3483 | AAL1186 | AAK0679 | AAJ2464 | AAK1062 | AAL4041 |
| ABC3486 | AAL1216 | AAK0713 | AAJ2466 | AAI3696 | AAJ0553 |
| ABC3879 | AAL1824 | AAK0945 | AAJ2469 | AAI3699 | AAJ1704 |
| ABC3880 | AAL2566 | AAK1063 | AAJ2473 | AAI3714 | AAK7029 |
| ABC3881 | AAL2579 | AAK1342 | AAJ5893 | AAI3716 | AAK7030 |
| ABC3882 | AAL2891 | AAK1345 | AAJ6259 | AAJ0292 | AAK7031 |
| ABC3883 | AAL3277 | AAK1427 | AAJ6431 | AAJ0293 | AAL1221 |
| ABC3884 | AAL5711 | AAK1774 | AAJ5373 | AAJ0431 | AAL1992 |
| ABC3885 | AAL6382 | AAK1943 | AAJ6628 | AAJ0432 | AAL3434 |
| ABC3886 | AAL6438 | AAK3186 | AAJ6836 | AAJ0505 | AAI3541 |

C-JTSCC/GSCC
SUBJECT: Contracting Officer Final Decision, Claim for Payment on 519 Transportation
Movement Requests, Contract W91B4N-11-D-7011

| | | | | | |
|---|---|---|---|---|---|
| ABC3887 | AAL6536 | AAK3224 | AAK0695 | AAK6347 | AAI3544 |
| ABC4255 | AAL8131 | AAK4554 | AAK5078 | AAK6348 | AAJ1093 |
| ABC4256 | AAL8265 | AAK4558 | AAL1827 | AAK6355 | AAL1595 |
| ABC4258 | AAL8443 | AAK5059 | AAL3439 | AAK6525 | AAL5637 |
| ABC4283 | AAL8597 | AAK5981 | AAJ2471 | AAK6526 | AAL7675 |
| ABC4380 | ABA0349 | AAK6003 | AAJ4529 | AAK6528 | AAL7688 |
| ABC4495 | ABA0645 | AAK6042 | AAJ6425 | AAK6529 | AAL7723 |
| ABC4532 | ABA1271 | AAK6186 | AAJ6439 | AAK6750 | AAL8289 |
| ABC4534 | ABA1407 | ABC4537 | ABA1726 | ABC4538 | ABA1822 |
| ABC4540 | ABA3751 | ABC4541 | AAK4742 | ABC5746 | AAL1815 |
| ABD0004 | AAL2706 | ABD0011 | AAL3788 | ABD0012 | AAL4375 |
| ABA0619 | AAJ0106 | ABA0624 | AAL0646 | ABA0631 | ABA0632 |

C-JTSCC/GSCC
SUBJECT: Contracting Officer Final Decision, Claim for Payment on 519 Transportation
Movement Requests, Contract W91B4N-11-D-7011

| | | | | | |
|---|---|---|---|---|---|
| ABA0633 | ABA0634 | ABA1728 | | | |

Enclosure 2 Acronym List

'- feet
" - inches
24/7 - 24 hours per day, 7 days per week
ACO – Administrative Contracting Officer
APPF - Afghan Public Protection Force
BATS - Biometric Automated Tracking System
$C^3$ - CENTCOM Contracting Command
Cargo Classes:      I - Subsistence (food), gratuitous health and comfort items
II - Clothing, individual equipment, tent-age, organizational tool sets and kits, hand tools,
unclassified maps, administrative and housekeeping supplies and equipment
III - Petroleum, Oil and Lubricants

C-JTSCC/GSCC
SUBJECT: Contracting Officer Final Decision, Claim for Payment on 519 Transportation
Movement Requests, Contract W91B4N-11-D-7011

IV - Construction materials
V - Ammunition
VI - Personal demand items
VII - Major end items
VIII - Medical material
IX - Repair parts and components
X - Non-military material
CJOA-A - Combined Joint Operations Area-Afghanistan
CLIN - Contract Line Item Number
cm - Centimeters
CTL - Convoy Team Leader
DCMA – Defense Management Contract Agency
DLA - Defense Logistics Agency
DoD - Department of Defense
DoDI 3020.50 - Department of Defense Instruction 3020.50
(http://www.acq.osd.mil/log/PS/p_vault/DODI_3020_50.pdf)
ECP - Entry Control Point
FAR - Federal Acquisition Regulation (https://www.acquisition.gov/Far/)
FBT - Flatbed Truck
FOB - Forward Operating Base
GAAP - Generally Accepted Accounting Principles (http://www.fasab.gov/accepted.html)
GDMS - Global Distribution Management System
GIRoA - Government of the Islamic Republic of Afghanistan
GPS - Global Positioning System
HET - Heavy Equipment Transporter
HMMWV (Humvee) - High Mobility Multipurpose Wheeled Vehicle
IAW - In Accordance With
ID - Identification
ITV - In-Transit Visibility
JMCB - Joint Movement Control Battalion
JV - Joint venture
kg - Kilograms
km - kilometer
KO - Contracting Officer
lbs - Pounds
LMR / TMR - Logistics Movement Request / Transportation Movement Request
LOA - Letter of Authorization
m - meters
MIL-HDBK-138B - Military Handbook 138B: Guide to Container Inspection
(www.everyspec.com/MIL-HDBK/MIL-HDBK+(0099+-+0199)/download.php?spec=MIL-
HDBK-138B.00000141.pdf)
MIL-STD 3004A w/Change 1(c1) - Department Of Defense Standard Practice, Quality
Surveillance For
Fuels, Lubricants, and Related Products (www.desc.dla.mil/DCM/Files/S002%203004CN1.pdf)

C-JTSCC/GSCC
SUBJECT: Contracting Officer Final Decision, Claim for Payment on 519 Transportation
Movement Requests, Contract W91B4N-11-D-7011

FM 10-67-1 - Field Manual 10-67-1: Concepts and Equipment of Petroleum Operations
(http://www.globalsecurity.org/military/library/policy/army/fm/10-67-1/index.html)
Mission Sheet - the document used by the JMCB to dispatch a vehicle by providing all pertinent
mission information, record/verify pickup and delivery by the customer, and permit entrance
onto USG or Coalition bases for upload/download.  When completed, the mission sheet is used
by the Contractor to claim mission completion and request payment.  Mission Sheets are
property of the USG.
MOR - Memorandum of Record
MRAP - Mine Resistant Ambush Protected Vehicle
NAT - National Afghan Trucking
NLT - No Later Than
PAM 55-20 - US Army Tie down Handbook for Movements
(www.tea.army.mil/pubs/nr/deploy/fgpamphlets/PAM_55-20.pdf )
PM - Program Manager
POC - Point of Contact
POL - Petroleum, Oil and Lubricants (POL)
PSC - Private Security Company
PWS - Performance Work Statement
QA - Quality Assurance
QA/QC - Quality Assurance / Quality Control
QC - Quality Control
QCP - Quality Control Plan
RDD - Required Delivery Date
Re-mission - to re-assign an asset from its current mission to a different mission
Reefer - Refrigerated Container
RLD – Required Delivery Date
RSD - Required Spot Date
ROE - Rules of Engagement
RT - Refrigerated Truck
RUF - Rules for the Use of Force
SPOT - Synchronized Pre-Deployment and Operational Tracker
US - United States
USCENTCOM - United States Central Command
USFOR-A - United States Forces - Afghanistan
USG - United States Government