# In the United States Court of Federal Claims

No. 14-496C

(Filed: May 11, 2015)

**********************************
)
**MANSOOR INTERNATIONAL**
**DEVELOPMENT SERVICES, INC.,**

          **Plaintiff,**

       **v.**

**UNITED STATES,**

          **Defendant.**

**********************************

)
)
)
)
)
)
)
)
)
)
)
)
)

Contractual dispute over trucking
services in Afghanistan; motion to
dismiss count of the complaint alleging
breach of the implied covenant of good
faith and fair dealing

      Thomas M. Brownell, Holland & Knight LLP, McLean, Virginia, for plaintiff.  With
Mr. Brownell on the brief was Terry L. Elling, Holland & Knight LLP, McLean, Virginia.

      Michelle R. Musgrave and Scott A. MacGriff, Trial Attorneys, Commercial Litigation
Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant.
With Ms. Musgrave on the briefs were Joyce R. Branda, Acting Assistant Attorney General,
Civil Division, Robert E. Kirschman, Jr., Director, and Reginald T. Blades, Jr., Assistant
Director, Civil Division, United States Department of Justice, Washington, D.C.  Of counsel was
Major Jennifer A. McKeel, Litigation Attorney, United States Army Legal Services Agency, Fort
Belvoir, Virginia.

## OPINION AND ORDER

LETTOW, Judge.

      This case arises from a contract dispute between Mansoor International Development
Services, Inc. ("Mansoor" or "plaintiff") and the United States ("the government"), acting
through the United States Army, Bagram Regional Contracting Center ("the Army").  In August
2011, Mansoor entered into an indefinite delivery/indefinite quantity ("IDIQ") contract with the
Army to provide trucking services in Afghanistan, which was terminated for default in March
2012.  Compl. ¶¶ 4-5, 7.  Thereafter, Mansoor submitted a claim to the contracting officer in the

amount of 81,473,654 Afghani ("AFN") seeking payment for various invoices.  Compl. ¶ 8.[1]  In June 2013, the contracting officer issued a final decision partially denying Mansoor's claim for payment.  *See* Compl. Attach. B (Contracting Officer's Final Decision (June 11, 2013)).

Mansoor brings this action pursuant to the Contract Disputes Act ("CDA"),[2] alleging breach of contract (Count I), Compl. ¶¶ 16-19, and breach of the implied covenant of good faith and fair dealing (Count II), Compl. ¶¶ 20-25.  The government has filed a motion to dismiss Count II of the complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC") and for failure to state a claim upon which relief can be granted pursuant to RCFC 12(b)(6).  *See* Def.'s Mot. to Dismiss Count II of Pl.'s Compl. for Lack of Subject Matter Jurisdiction and Failure to State a Claim ("Def.'s Mot.") at 1, ECF No. 16.  The government's motion has been fully briefed and was addressed at a hearing held on May 8, 2015.

## BACKGROUND[3]

Mansoor is an Afghan corporation based in Kabul, Afghanistan.  Compl. ¶ 2.  On or about August 11, 2011, the Army awarded to Mansoor contract number W91B4N-11-D-7011 ("the contract") for approximately 48,307,159,600 AFN.  Compl. ¶ 4.  The award was a multi-award IDIQ contract to provide trucking services in Afghanistan on an initial 12-month term pursuant to the National Afghan Trucking ("NAT") program.  Compl. ¶¶ 5, 7.  The contract divided the transportation missions into three "Suites"— Suite I (Bulk Fuels), Suite II (Dry Cargo), and Suite III (Heavy Cargo) — based upon the type of cargo being transported and the equipment needed for such transportation.  Compl. ¶ 6.  For services under each Suite, the contract specified a series of fixed unit prices attributed to completed mission units, assets used, and responsibility for security of the mission.  Compl. ¶ 6.

Under the terms of the contract, the Army issued task orders consisting of Transportation Movement Requests ("TMRs") for transportation missions.  Compl. ¶ 5.  The TMRs were awarded on a competitive basis based upon NAT contractors' rankings.  Compl. ¶ 5.  Payment of the TMRs was determined by fixed-unit prices for services, distances, and delays, in addition to other factors.  Compl. ¶ 5.  Payment was subject to reduction or back-charge due to quality assurance and control factors, such as "unexcused delays, failures to comply with performance objectives, failures to complete the mission[,] and/or pilferage or loss of the cargo."  Compl. ¶ 5.  Further, under paragraph 5.4 of the contractual Performance Work Statement ("PWS"), a

---

[1]The Afghani (code: "AFN," symbol: "Afs") is the currency of Afghanistan.  The claimed amount, 81,473,654 AFN, amounts to 1,406,660 USD, at an exchange rate of 1 AFN = 0.01727 USD.  *See* Compl. n.1.

[2]The Contract Disputes Act of 1978, as amended, is codified at 41 U.S.C. §§ 7101-09.

[3]The recitation that follows does not constitute findings of fact by the court and is provided solely to establish a context for deciding the currently pending motion.

mission completed more than seven days past the required delivery date was considered "failed" and no compensation would be awarded.  Compl. Attach. B ¶ 4a.

On March 31, 2012 the Army terminated its contract with Mansoor for default.  Compl. ¶ 7.[4]  Thereafter, Mansoor submitted a certified claim to the contracting officer in the amount of 81,473,654 AFN for "some 519 TMRs, previously submitted under various invoices, that the [g]overnment had refused to pay, in whole or in part, for the period between September, 2011 and June, 2012."  Compl. ¶ 8; *see also* Compl. Attach. A (Certification of Claims for Contract No. W91B4N-11-D-7011 (Feb. 22, 2013)).  After receiving Mansoor's claim, the contracting officer notified plaintiff that the Army was willing to discuss a settlement for the 519 TMRs at issue.  *See* Compl. Attach. B ¶ 4.  During a teleconference held on April 25, 2013, the Army explained "that settlement negotiation would center around a single claim adjudication that would encompass all 519 TMRs which constituted [Mansoor's] claim" and offered to pay Mansoor a portion of its original claim.  Compl. Attach. B ¶ 5.  In response, Mansoor requested that the Army evaluate each TMR individually, and on May 26, 2013, it submitted a counteroffer.  *See* Compl. Attach. B ¶¶ 5, 8.  On June 5, 2013, the contracting officer provided Mansoor a further counteroffer.  *See* Compl. Attach. B ¶ 9.  Mansoor rejected this latest offer and stated that its previous counteroffer still stood.  *See* Compl. Attach. B ¶ 9.  At that time, the Army felt that Mansoor was not willing to negotiate "in good faith by indicating [its] previous counteroffer [still stood] even though the [g]overnment offered a higher offer."  Compl. Attach. B ¶ 9.

Facing a stalemate in settlement negotiations, the contracting officer issued a final decision on June 11, 2013 in accord with the Federal Acquisition Regulations, 48 C.F.R. ("FAR") § 33.210.  *See* Compl. Attach. B.[5]  The contracting officer stated that the Army "agree[d] that [Mansoor] ha[d] established entitlement to part of its claims, but, based on the results of [an] audit[,] the [Army] disagree[d] with [Mansoor] that the entirety of the claim [was] valid."  Compl. Attach. B ¶ 9.  The audit was based on an "Aggregate Claims Adjudication ('ACA') method" which segregated non-meritorious TMRs, compared categories of TMRs, and

---

[4]Relatedly, the termination for default is under appeal before the Armed Services Board of Contract Appeals ("ASBCA") as case number ASBCA 58423.  Compl. ¶ 7.  That appeal has been consolidated with other pending appeals from Mansoor related to the contract at issue.  *See* Def.'s Mot. at 3 n.2.

[5]The provision of the FAR states, in relevant part:

> [C]ontracting officers are authorized, within any specific limitations of their warrants, to decide or resolve all claims arising under or relating to a contract subject to the [Contract] Disputes [Act].  In accordance with agency policies and 33.214, contracting officers are authorized to use ADR procedures to resolve claims. . . .

FAR § 33.210.

conducted a sampling of individual TMRs.  Compl. Attach. B ¶ 2.  According to the contracting officer,

> [t]he ACA method utilizes historical data to produce a baseline for sampling of a NAT contract carrier's claims.  To prepare a proposal, the contracting officer uses the ACA method to develop a statistically sound payout expectation.  The ACA results are then compared to a historical data trend analysis to audit the validity of a carrier's claim.  Given the discrete set of variables affecting the payout of individual TMRs, the large sample size of TMRs, and standard statistical analysis, the ACA auditing method produces a sound method for evaluating a particular NAT contract carrier's overall claim for a set of TMRs submitted.

Compl. Attach. B. ¶ 3.  This approach indicated that several TMRs reflected failed missions where Mansoor did not ensure timely delivery pursuant to the PWS or comply with a Required Spot Date.  Compl. Attach. B. ¶¶ 4a-c; *see also* Compl. ¶ 9.  Additionally, a large percentage of TMRs submitted by Mansoor lacked military grid reference system coordinates and other data "which would identify performance measurement standards necessary to validate basic transportation services."  Compl. Attach. B. ¶ 4d.  Based on the ACA method, the contracting officer determined that Mansoor was only entitled to 30,000,000 AFN of its total claim.  Compl. Attach. B ¶ 9.

Just short of one year after the final decision, on June 9, 2014, Mansoor filed a complaint in this court.  Count I of the complaint alleges that the Army breached the contract by refusing to pay, in full or in part, for the 519 TMRs included in Mansoor's certified claim.  Compl. ¶ 17.  In Count II, Mansoor contends that the Army breached the implied covenant of good faith and fair dealing because the contracting officer failed to "fairly and independently consider the merits of the contractor's claim."  Compl. ¶ 24.  Mansoor alleges that the contracting officer "applied undisclosed statistical analyses, involving data from other contracts, to the gross amount of [Mansoor's] claim, [and] refus[ed] to consider or negotiate with [Mansoor] the merits of individual claim elements."  *Id.*[6]  In terms of relief, Mansoor seeks damages in the amount of 75,000,000 AFN, in addition to "interest, costs of suit[,] and other relief as to the [c]ourt may seem just and proper."  Compl. at 7.

---

[6]After filing its complaint, Mansoor submitted a motion to consolidate the current case with the appeals pending before the ASBCA.  Pl.'s Mot. to Consolidate Appeal with Appeals Pending Before the Armed Services Board of Contract Appeals, ECF No. 10.  The government objected, representing to the court that it was exploring whether Mansoor engaged in fraud during performance of the underlying contract and contending that this court should retain jurisdiction because it possesses the juridical power to hear fraud claims.  *See* Def.'s Response in Opp'n to Pl.'s Mot. to Consolidate and Request for an Extension of Time, ECF No. 11.  In these circumstances, the court issued an order on January 23, 2015 denying Mansoor's motion to consolidate without prejudice to potential renewal.  *See* Order of Jan. 23, 2015, ECF No. 15.

## STANDARDS FOR DECISION

### A.  *Jurisdiction*

Before proceeding to the merits, "a court must satisfy itself that it has jurisdiction to hear and decide a case." *Hardie v. United States*, 367 F.3d 1288, 1290 (Fed. Cir. 2004) (quoting *PIN/NIP, Inc. v. Platte Chem. Co.*, 304 F.3d 1235, 1241 (Fed. Cir. 2002)) (internal quotation marks omitted).  When deciding whether to dismiss a motion under Rule 12(b)(1) for lack of subject matter jurisdiction, the court will "normally consider the facts alleged in the complaint to be true and correct." *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).  The plaintiff bears the burden of "alleg[ing] in his pleading the facts essential to show [subject matter] jurisdiction" by a preponderance of the evidence.  *McNutt v. General Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936); *see also Reynolds*, 846 F.2d at 748.

### B.  *Failure to State a Claim*

Dismissal is warranted under Rule 12(b)(6) if the "facts asserted by the claimant do not under the law entitle him [or her] to a remedy." *Perez v. United States*, 156 F.3d 1366, 1370 (Fed. Cir. 1998).  To survive a motion to dismiss for failure to state a claim, the plaintiff's complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  Additionally, the facts alleged must "'plausibly suggest[] (not merely [be] consistent with)' a showing of entitlement to relief." *Cary v. United States*, 552 F.3d 1373, 1376 (Fed. Cir. 2009) (quoting *Twombly*, 550 U.S. at 557).  Although the complaint "does not need detailed factual allegations," *Twombly*, 550 U.S. at 545, it must present more than "'naked assertion[s] devoid of 'further factual enhancement,'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557) (alteration in original), or "the-defendant-unlawfully-harmed-me-accusation[s]," *id.* (citing *Twombly*, 550 U.S. at 555).  The court must "draw on its judicial experience and common sense" in determining whether the plaintiff has pled adequate facts to allow the court to infer that his or her entitlement to relief is plausible—not merely possible, *id.* at 679, and "must accept as true the complaint's undisputed factual allegations and should construe them in a light most favorable to the plaintiff," *Cambridge v. United States*, 558 F.3d 1331, 1335 (Fed. Cir. 2009) (citing *Papasan v. Allain*, 478 U.S. 265, 283 (1986); *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed. Cir. 1991)).

## ANALYSIS

### A.  *Subject Matter Jurisdiction*

The government's motion to dismiss Count II of the compliant pursuant to RCFC 12(b)(1) initially propounds the well-established premise that a contracting officer's final decision is only a jurisdictional prerequisite for a CDA suit in this court and the merits of the dispute are addressed *de novo* without deference accorded to the contracting officer's final

decision.  *See* Def.'s Mot. at 8-9; *see also Hernandez, Kroone & Associates, Inc. v. United States*, 110 Fed. Cl. 496, 519 (2013), *reconsid. denied*, 2013 WL 3199299 (Fed. Cl. June 25, 2013) ("Under the Contract Disputes Act, submission of a claim to the contracting officer is a necessary prerequisite to bringing a direct action suit upon denial of the claim, but the proceeding on the matter in this court is *de novo*, not an appeal of the contracting officer's denial.") (citing 41 U.S.C. §§ 7103(e), 7104(b)(4)).  The government then builds on this principle by reclassifying and redefining Mansoor's claim, averring that "the crux of Mansoor's claim for breach of the covenant of good faith and fair dealing appears to be that the contracting officer did not analyze the TMRs in the manner that Mansoor requested."  Def.'s Mot. at 8.  The government argues that this premise for Mansoor's claim is "irrelevant to the proceedings in this [c]ourt because Mansoor must 'prove the fundamental facts of liability and damages de novo.'" *Id.*; *see also* Def.'s Reply in Support of its Mot. to Dismiss Count II of Pl.'s Compl. for Lack of Subject Matter Jurisdiction and Failure to State a Claim ("Def.'s Reply") at 3, ECF No. 19 (quoting *Wilner v. United States*, 24 F.3d 1397, 1401 (Fed. Cir. 1994)).  From this constructed postulate, the government leaps to the conclusion that the court lacks the juridical power "to entertain Mansoor's request that the [c]ourt review the contracting officer's final decision." Def.'s Mot. at 9.

Mansoor's response also begins with a well-recognized axiom involving the implied covenant of good faith and fair dealing, *i.e.*, that "[t]he implied covenant of good faith and fair dealing requires that the [g]overnment, including the [c]ontracting [o]fficer[,] 'not . . . act so as to destroy the reasonable expectations of the other party regarding the fruits of the contract.'" Pl.'s Opp'n to Defendant's Mot. to Dismiss Count II of Pl.'s Compl. for Lack of Subject Matter Jurisdiction and Failure to State a Claim ("Pl.'s Opp'n") at 3, ECF No. 18 (quoting *Metcalf Const. Co. v. United States*, 742 F.3d 984, 991 (Fed. Cir. 2014) (in turn quoting *Centex Corp. v. United States*, 395 F.3d 1283, 1304 (Fed. Cir. 2005))).  Mansoor maintains that the Army breached the implied covenant of good faith and fair dealing by applying the ACA methodology, which allegedly constituted an approach to enforcement that was neither contemplated by the parties nor consistent with the express terms of the contract.  *See* Pl.'s Opp'n at 4.  A claim based upon these allegations, according to Mansoor, falls within the jurisdictional purview of this court.

The government disputes that the claims in Count II of the complaint pertain to a breach of an obligation in the contract.  *See* Def.'s Reply at 2 ("Mansoor's response attempts to change the focus of its complaint from taking issue with the method by which the contracting officer's final decision analyzed its claim to now suggesting that it has alleged a breach of an unidentified express contract provision.").  Rather, it urges that "Mansoor's allegations reflect a disagreement with the contracting officer's approach to Mansoor's claim" and are insufficient to invoke this court's jurisdiction because a contracting officer's final decision is irrelevant to this court's *de novo* review.  *See id.* at 2-4.

The government's contention is sophistic and untenable.  Although it is true that "once an action is brought following a contracting officer's decision, the parties start in [this] court . . . with a clean slate," *Wilner*, 24 F.3d at 1402, *de novo* consideration of a claim does not wholly ignore what the contracting officer actually did.  For this court to possess subject matter jurisdiction under the CDA, "the contractor must submit a proper claim—a written demand that

includes (1) adequate notice of the basis and amount of a claim and (2) a request for a final decision.  In addition, the contractor must have received the contracting officer's final decision on that claim."  *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1328 (Fed. Cir. 2010).  Here, there is not a want of subject matter jurisdiction because the foregoing requirements have been satisfied.  As plaintiff contends, the court has jurisdiction to determine whether "the [Army] breached its duty of good faith and fair dealing by not (1) reviewing [Mansoor's] TMRs, (2) processing its invoices, and (3) determining its [c]laim in accordance with the express terms of the [c]ontract."  Pl.'s Opp'n at 4.

## B.  *Breach of the Implied Covenant of Good Faith and Fair Dealing*

The government's contention that Mansoor has failed to state a claim upon which relief can be granted reprises its jurisdictional arguments, converting them to a charge that Count II of the complaint lacks the requisite factual allegations to support a claim for breach of the implied covenant of good faith and fair dealing.  *See* Def.'s Mot. at 9; *see also* Def.'s Reply at 3.  In the government's view, the implied duty of good faith and fair dealing "is limited to ensuring compliance with the express terms of the contract and, thus, does not create obligations not contemplated in the contract itself."  Def.'s Mot. at 9 (citing *Bradley v. Chiron Corp.*, 136 F.3d 1317, 1326 (Fed. Cir. 1998); *United States v. Basin Elec. Power Co-op.*, 248 F.3d 781, 796 (8th Cir. 2001)).  This argument focusing solely on express terms of a contract would eliminate any possibility that the implied duty of good faith and fair dealing could itself provide the basis for a claim that a contract was breached.  That is wrong.  The implied duty stems from the consensual terms reflected in an express contract, but it addresses the parties' reasonable expectations that may not have been embodied in explicit contractual language.[7]

---

[7]The government's contention and the cases it cites in support recycle an argument it previously made and lost in the court of appeals.  The cases were critically distinguished by the Federal Circuit in *Metcalf Construction.  See* 742 F.3d at 994 ("The government cites [*Bradley* and *Basin Electric Power Cooperative*] to bolster its apparent position, but [neither case] holds that the implied duty requires a breach of an express contractual duty.").  In *Metcalf Construction*, after noting that *Bradley* "mentions the duty of good faith and fair dealing only in a parenthetical explaining an intermediate appellate court decision from California," *id.*, the court of appeals explained that

> In *Centex*, . . . we declined to read *Bradley*'s parenthetical expansively, concluding that "it would be inconsistent with the recognition of an implied covenant if we were to hold that the implied covenant of good faith and fair dealing could not be enforced in the absence of an express promise to pay damages in the event of conduct that would be contrary to the duty of good faith and fair dealing."  393 F.3d at 1306.  And the government's other featured case, . . . *Basin Elec. Power Co-op.*, 248 F.3d 781 . . . , similarly recognizes that the implied duty in fact is not limited to "the enforcement of terms actually negotiated."  *Id.* at 796 (internal quotation marks omitted).

*Id.*

A claim that a party to a contract breached the duty of good faith and fair dealing implicates common law and is generally addressed by *Restatement (Second) of Contracts* § 205 (1981). That Section provides that "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Restatement (Second) of Contracts* § 205; *see also Metcalf Const.*, 742 F.3d at 990. The *Restatement* observes that "[g]ood faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." *Restatement (Second) of Contracts* § 205 cmt. a. And, "the implied duty exists because it is rarely possible to anticipate in contract language every possible action or omission by a party that undermines the bargain." *Metcalf Const.*, 742 F.3d at 991. Rather, "the nature of that bargain is central to keeping the duty focused on 'honoring the reasonable expectations created by the autonomous expressions of the contracting parties.'" *Id.* (citing *Tymshare, Inc. v. Covell*, 727 F.2d 1145, 1152 (D.C. Cir. 1984) (per Scalia, J.)). In short, the duty "prevents a party's acts or omissions that, though not proscribed by the contract expressly, are inconsistent with the contract's purpose and deprive the other party of the contemplated value." *Id.* (citing *First Nationwide Bank v. United States*, 431 F.3d 1342, 1350 (Fed. Cir. 2005)).

The duty of good faith and fair dealing most often is raised respecting the parties' performance obligations, but it also explicitly pertains to enforcement. *See Restatement (Second) of Contracts* § 205 cmt. e ("The obligation of good faith and fair dealing extends to the assertion, settlement and litigation of contract claims and defenses."). "Bad faith" is not a necessary element of the duty in this regard. Importantly, the duty "also extends to dealing which is candid but unfair." *Id.* That essentially is the tenor of the allegations Mansoor presents in Count II. Plaintiff is asserting that the contracting officer breached the duty of good faith and fair dealing by addressing its claims using a statistical or quasi-statistical means, *i.e.*, the "ACA method," that incorporated data derived from performance of unrelated contracts and did not focus on the individual circumstances of each of the TMRs at issue. Whether that approach to enforcement was reasonable in the setting of this contract is a question for another day, the answer to which will turn in substantial part on the parties' expectations under the contract. Nonetheless, Mansoor has manifestly stated a potentially viable claim for relief based on an alleged breach of the implied duty of good faith and fair dealing in the enforcement of the contract at issue.

## CONCLUSION

For the reasons stated, the government's motion to dismiss pursuant to RCFC 12(b)(1), or, alternatively, RCFC 12(b)(6) is DENIED. The parties shall proceed with discovery and other pretrial preparatory steps in accord with the scheduling order issued on April 6, 2015.

It is so **ORDERED**.

s/ Charles F. Lettow
Charles F. Lettow
Judge